## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

IN THE MATTER OF THE
INTERCEPTION OF ORAL
COMMUNICATIONS OF BRANDON
STEVEN AND MICHAEL O'DONNELL

Case No.  17-mc-104-EFM

## MEMORANDUM AND ORDER

Sometime between May 14, 2015, and July 1, 2015, several Wichita Eagle employees, as well as an employee of the McClatchy Company,[1] spoke on the phone with either Brandon Steven—a prominent Wichita businessman—or Michael O'Donnell—a Wichita politician.   On February 1, 2017, the Wichita Eagle and its employees ("the Movants") each received a letter from the United States Department of Justice, informing them that those phone calls had been intercepted pursuant to an investigation involving wiretaps on Steven and O'Donnell's phones. The Movants now move the Court for an order to disclose both the content of their intercepted communications in addition to the application for and order granting the wiretaps (Doc. 1).  For the reasons stated below, that motion is denied.

### I.        Factual and Procedural Background

On May 14, 2015, this Court authorized the interception of telephone communications of Brandon Steven, a prominent Wichita businessman.  On June 2, 2015, this Court authorized the interception of telephone communications of Michael O'Donnell, who at that time was a Kansas

---

[1] The McClatchy Company is the Eagle's parent corporation.

State Senator and is currently a Sedgwick County Commissioner.  The wiretaps were authorized under Title III of the Omnibus Crime Control and Safe Streets Act ("Title III").[2]  Accordingly, from May 14, 2015, through June 13, 2015, the Government intercepted Steven's phone calls.  During that period, Steven spoke on the phone with Carolyn Rengers of the Wichita Eagle.  And from June 3, 2015, through July 1, 2015, the Government intercepted O'Donnell's phone calls.  During that period, O'Donnell spoke on the phone with Sherry Chisenhall, Bryan Lowry, and Dion Lefler, all of the Wichita Eagle.  O'Donnell also spoke on the phone with Lindsay Wise of The McClatchy Company.

On February 1, 2017, the Wichita Eagle, Rengers, Chisenhall, Lowry, Lefler, and Wise each received a letter from the United States Department of Justice, informing them that those phone calls had been intercepted pursuant to the wiretaps on Steven and O'Donnell's phones.  The headings noted that the letters regarded the phone number of either Brandon Steven or Michael O'Donnell (depending on which call the letter corresponded to).  The body of the letter read, in full:

> To Interceptee:
>
> This is to inform you pursuant to Title 18, United States Code, § 2518(8)(d) that you were either named in an order and/or application made in the District of Kansas authorizing the interception of wire, oral and/or electronic communications or were a party to an intercepted communication.
>
> For the above number, communications were intercepted between [May 14 or June 3], 2015, and [June 13 or July 1], 2015.
>
> This notice does not mean that you are being charged in court with anything.  This is simply a notice which the law requires we send to you.  It only means that you, or someone using a telephone subscribed to you, were intercepted talking with a person using the telephone number listed above.

---

[2] 18 U.S.C. §§ 2510, *et seq.*

Please do not call this office, as we are unable to give out any further information.

The Government's investigation that gave rise to the wiretaps is still ongoing.  No indictments have been filed.  Nobody, including any of the Movants, has been charged with a crime.  And there is no evidence from which the Movants would reasonably believe that they are targets of the investigation or will likely face any charges.

The Movants now move that the Court disclose to them documentation of their intercepted phone calls as well as the application for and order granting the interceptions.  The Government, as an interested party, filed a response in opposition to the Movants' motion.

## II.        Analysis

### A. Status of the Movants

Before considering the Movants' substantive arguments, the Court must clarify their status as it relates to the interception of Steven's and O'Donnell's communications.

The Movants received notice that their calls had been intercepted under 18 U.S.C. § 2518(8)(d), which provides in relevant part:

> Within a reasonable time but not later than ninety days after . . . the termination of the period of an order [allowing the interception of communications] or extensions thereof, the issuing or denying judge shall cause to be served, on the persons named in the order or the application, *and such other parties to intercepted communications as the judge may determine in his discretion that is in the interest of justice*, an inventory . . . .

That subsection further provides that upon the filing of a motion, the Court

> [M]ay in his discretion make available to such person [who had been provided an inventory] or his counsel for inspection such portions of the intercepted communications, applications and orders as the judge determines to be in the interest of justice.

Under the plain reading of the statute, then, an inventory must be sent to those named in the order or application related to intercepted phone calls. In other words, the targets of the wiretaps must be notified. But under the statute, for non-targets whose communications were incidentally intercepted, notification is only required "as the judge may determine in his discretion that is in the interest of justice." The Movants pointed out that, given this statutory framework, they are more than inconsequential interceptees because they received notice under § 2518(8)(d). Obviously, the Movants contend, their conversations are significant to the Government's investigation because a judge determined that it was in the interest of justice that they be served an inventory.

The Movants' understanding of the situation is based entirely on the plain language of § 2518(8)(d), and their deduction is logically sound. If the statute were followed verbatim, then the Movants would only receive notice if they were targets of the investigation, or if a judge had determined they must be notified in the interest of justice. But at the hearing on the Movants' motion, the Government revealed that in practice, it does more than the statute requires. Rather than only notifying those required by § 2518(8)(d), the Government's practice is to send notice to every single individual whose calls have been intercepted. As the Government stated

> The registered or identified subscriber to that number [of any interceptee] is given an inventory notice, despite their status, despite the length of the interception, despite whether it's privileged, non-privileged, pertinent, or non-pertinent, they're given the inventory notice.

Given its practice of sending notice to every single interceptee, then, the Government contends that there can be no inference that the Movants were more than inconsequential interceptees. But in consideration of its pending investigation, the Government opted not to elaborate further.

All told, the Movants are interceptees who were provided notice that their calls had been intercepted. Although the notice was not statutorily required, the letter indicated that the Movants were being notified pursuant to § 2518(8)(d). As such, the Movants are entitled to move the Court to "make available . . . such portions of the intercepted communications, applications and orders."[3] But the Government's practice of sending notice to all interceptees means that there was no finding that it was in the interest of justice that the Movants receive notice. Contrary to the Movants' earlier belief, there is nothing to suggest that there is anything especially pertinent about the Movants' intercepted communications. So the Court is faced with a motion by third parties whose calls were intercepted, but who at least presently have no good reason to believe that they were targets—or even persons of interest—in the underlying investigation.

**B. The Movants' Requested Disclosures**

The posture of this case is unusual—hardly any precedent exists where a non-target, notified interceptee seeks disclosure under § 2518(8)(d) before an indictment has been filed. With such a dearth of relevant authority, a substantial portion of the parties' briefing was devoted to determining the applicable standard that the Court is to apply.

Section 2518(8)(d) allows a notified interceptee to file a motion asking the Court, in its discretion, to make available both intercepted communications as well as applications and orders for the interceptions. That subsection provides that the Court may make such documents available "as the judge determines to be in the interest of justice."[4]

---

[3] 18 U.S.C. § 2518(8)(d).

[4] 18 U.S.C. § 2518(8)(d).

Those two categories of documents—intercepted communications and applications and orders—are accounted for elsewhere in § 2518(8).  Section 2518(8)(a) governs the management of intercepted communications, and provides that the contents of intercepted communications "shall be made available to the judge issuing such order and sealed under his directions."  That subsection further provides:

> Duplicate recordings may be made for use or disclosure pursuant to the provisions of subsections (1) and (2) of section 2517 of this chapter for investigations.  The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contends of any wire, oral, or electronic communication or evidence derived therefrom under subsection (3) of section 2517.[5]

Section 2518(8)(b) similarly governs the management of applications and orders.  That subsection mandates that "[a]pplications made and orders granted under this chapter shall be sealed by the judge."[6]  That subsection further provides that "[s]uch applications and orders shall be disclosed only upon a showing of good cause before a judge."[7]

The Government's position is that § 2518(8)(d), which allows for this motion, must be read in concert with §§ 2518(8)(a)-(b).  Put another way, although § 2518(8)(d) provides for a motion for disclosure of wiretap information, disclosure is still governed by §§ 2518(8)(a)-(b).  Thus, in seeking the intercepted documents under § 2518(8)(d), the Movants would have to show that disclosure of those documents was required pursuant to § 2517,[8] as required by § 2518(8)(a), which governs the management and disclosure of intercepted communications.  Similarly, in

---

[5] 18 U.S.C. § 2518(8)(a).

[6] 18 U.S.C. § 2518(8)(b).

[7] 18 U.S.C. § 2518(8)(b).

[8] While § 2518(8)(a) governs the management of intercepted communications, § 2517 lists circumstances in which disclosure of those communications is authorized.

seeking the application and order, the Movants would have to show good cause, as required by § 2518(8)(b), which governs the management of applications and orders. And even if the Movants could make these showings, the Court would still have to determine that disclosure is in the interest of justice, pursuant to § 2518(8)(d).

Conversely, the Movants' position is that § 2518(8)(d) provides a route to disclosure *in addition* to those provided for in § 2518(8)(a)-(b). As notified interceptees, the Movants argue that § 2518(8)(d) plainly allows them to file a motion for disclosure without reference to any other subsection.[9] Sections 2518(8)(a)-(b), the Movants argue, apply to members of the public, but not to notified interceptees. Accordingly, the Movants argue that the framework is simple: if the Court determines that disclosure is in the interest of justice, then it has the discretion to grant the Movants' motion. Assuming without deciding that the Movants' less-onerous burden applies, the Court still finds that disclosure is not in the interest of justice at this time.[10]

The Movants' arguments for disclosure can generally be placed into two categories: public and private interests.[11] The Court will consider these interests in turn.

---

[9] *In re Warrant Authorizing Interception of Oral Commc'ns*, 673 F.3d 5, 7 (1st Cir. 1982) (noting that § 2518(8)(d) "clearly authorizes the district court to order that documents be disclosed to an intercepted party.").

[10] The Movants proceeded under the assumption that "interest of justice" was a less-onerous burden than the "good cause" standard found in § 2518(8)(b). The Court is not so sure, but need not decide that issue at this time.

[11] Two of the Movants' factors relate to their impression that, based on the language of § 2518(8)(d), a judge had already determined that it was in the interest of justice that they be notified. Those factors related to minimization and the fact that notification implied that their calls were significant to the investigation. But these factors are of little import in light of the Government's revelation that its practice was to send notice to every interceptee, even if the call was minimized or insignificant. Given this fact, the Movants have no reason to believe that their calls were significant or improperly minimized, and disclosure on these grounds would be nothing more than a fishing expedition.

*1. Public Right to Know*

The Movants assert that disclosure is in the interest of justice because Brandon Steven and Michael O'Donnell are both prominent public figures in the Wichita community. The Movants do not go as far as to argue that they have a First Amendment or common law right to the disclosure of sealed materials as either individuals or members of the press. And for good reason: federal courts have rejected that argument.[12]  The general consensus is that Title III carries a statutory presumption against disclosure that outweighs any asserted right to judicial documents either under the common law or the First Amendment.[13]

Conceding that they do not have an absolute right to disclosure, the Movants still argue that the public's right to know should be a factor that the Court considers in using its discretion to determine whether disclosure is in the interest of justice. The Movants argue that the interest of justice would be advanced by a more complete understanding of the investigation. In addition, Movants note that Steven is a prominent businessman and O'Donnell represents the people of the community. In their respective capacities, both men deal with the public and rely to some extent on the public trust. Therefore, the Movants argue that the public would be better served with more information about the investigation of these two public figures. As the Movants' counsel stated, "the right to know is in the interests of justice. And I think that the community now has some information about an investigation that's giving rise to just speculation and rumor, and I don't believe that is in the interests of justice." Ultimately, he implored the Court to consider "whether releasing information is in the interest of justice more

---

[12] *See In re N.Y. Times Co. to Unseal Wiretap & Search Warrant Materials*, 5773 F.3d 401 (2d Cir. 2009); *In re Applications of the Kan. City Star*, 666 F.2d 1168 (8th Cir. 1981).

[13] *In re N.Y. Times*, 577 F.3d at 408-11; *In re Kan. City Star*, 666 F.2d at 1175-77.

than hiding information" and challenged "the default position that we're always better off keeping as much secret as possible."

The Court agrees that all other things being equal, justice is better served when information is shared and not hidden. But at this stage of the investigation, all other things are not equal. The Movants ask the Court to consider the interest of justice. But justice includes enforcement of the United States Criminal Code. The Government has represented that its investigation is ongoing, and interference with an ongoing investigation can hardly be said to be in the interest of justice.[14] Justice can only be served when the Government is allowed to investigate alleged wrongdoing to the fullest. At this time, the Court is unwilling to interfere with such an investigation by ordering that the Government start disclosing information related to an open investigation.

The Movants are not wrong for wanting to know more, they are just too early. If charges are ever brought, the Movants will have more access to information surrounding this investigation. Alternatively, if charges are not brought after what seems to be an unreasonable amount of time, the Movants may have a stronger argument for the disclosure in a renewed motion. But presently, just one month after receiving notice and while the investigation is still ongoing, the integrity of the Government's investigation outweighs the Movants' desire to inform the public about the specifics of the wiretap.[15]

---

[14] *See Stoddard v. United States*, 710 F.2d 21, 23 (2d Cir. 1983) (affirming the decision not to disclose wiretap information where the court "considered both [the movant's] arguments as to the need for disclosure and the harm that such disclosure might work in the context of a continuing homicide investigation.").

[15] *In re Persico*, 362 F. Supp. 713, 714 (E.D.N.Y. 1973) (denying a movant's motion for disclosure where "disclosure at this times [sic] could jeopardize the continuing investigation, and it would serve no interest of justice not better served by delaying disclosure until after indictment or after abandonment of the investigation.")

*2. Private Right to Know*

Aside from the targets' public status, the Movants advance more private arguments in support of disclosure. At times these claims mirror Fourth Amendment arguments, but in short, the Movants contend that their status as notified interceptees imparts on them a right to know more.

For example, the Movants note that they "have a liberty interest and a property right in their own private communications" and thus, upon receiving notice that their calls were intercepted have a right "to know which of their communications have been intercepted by their government, and to know the reasons their government has provided the Court to justify the interception of their private communications." The Movants also argue that such disclosure is dictated by fairness under the § 2518(8)(d). They assert that because the statute orders notification of certain interceptees in addition to targets, it is only fair that interceptees be given enough information to know that they are not, in fact, targets of the investigation. The Movants argue that such a disclosure is implicit in the statute.

As with their public interest argument, the Movants concede that there is no recognized right to disclosure under this theory, but ask the Court to consider their private interests in determining whether disclosure is in the interest of justice. While once again recognizing the Movants' legitimate concerns, the Court still finds that at this time, disclosure would not be in the interest of justice.

The Court acknowledges that the Movants have an interest in knowing which of their conversations the Government intercepted, and why it did so. Even though the law does not provide an absolute right to such disclosures, in most circumstances the disclosure of information furthers the interest of justice more than its concealment. But as noted above, the presence of an

ongoing investigation leads the Court to the result that the interest of justice is best served by allowing the Government to investigate and enforce federal law.

Additionally, it is worth noting that the Movants are not the only individuals with privacy interests at stake.  Notification under § 2518(8)(d) does not automatically trigger disclosure.[16] And contrary to the Movants' claim, disclosure in not implicit in the statute; rather, there is a statutory presumption against disclosure.[17] That presumption exists even absent a government claim to confidentiality, because "the protection of privacy was an overriding congressional concern in the enactment of Title III."[18]  And that privacy interest extends beyond non-targets who received notice under § 2518(8)(d).  Applications and orders related to wiretaps are extremely detailed, and their disclosure could reveal a substantial amount of detail about the investigation and the targets themselves.  Such a disclosure would be inappropriate, especially here, where the investigation is still ongoing and no indictments have been brought.  The Court recognizes the Movants' privacy interests, but also must weigh them against the privacy interests of others involved in the investigation.  At this time, the Movants' interest in the sought information is not compelling enough to warrant disclosure.

### III. Conclusion

Taken together, the Movants' arguments about both public and private interests fail to convince the Court that disclosure is appropriate at this time.  However, although presently unconvincing, the Movants' concerns are far from trivial.  "Openness thus enhances both the

---

[16] *Stoddard*, 710 F.2d at 23.

[17] *In re New York Times*, 577 F.3d at 407 (citing *Nat'l Broadcasting Co. v. U.S. Dep't of Justice*, 735 F.2d 51, 53 (2d Cir. 1984)) (noting that "Title III created a strong presumption *against* disclosure of the fruits of wiretap applications.").

[18] *In re Kan. City Star*, 666 F.2d at 1175 (internal quotation marks omitted) (quoting *Gelbard v. United States*, 408 U.S. 41, 48 (1972)).

basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system."[19]   The Court has noted that at some time in the future, either after individuals are indicted or the investigation has ended, the Movants' arguments for disclosure will be much more persuasive.   But how are the Movants—or anybody whose calls have been intercepted—to know when that time has arrived?   At the hearing on this motion, the Court was unable to find a suitable answer to that question.

Theoretically, the Government's investigation could end without charges ever being brought.   In such a case, one could hardly expect the Government to simply announce that it was no longer conducting an investigation.   And even if it wanted to, the Government is statutorily prohibited from disclosing wiretap information without a court order.[20]   Outside of regularly renewing this motion—which could prove to be a costly endeavor—it is unclear how the Movants would ever know when they might be able to access their communications that the government intercepted.   The Court is troubled by the possibility of innocent persons having their communications intercepted, and finding themselves unable to find out what was intercepted or why.   As it is currently drafted, Title III might not provide an adequate recourse for people in the Movants' position.   And while that is a problem that the Court need not address today, it is a problem just the same.

---

[19] *Press-Enter. Co. v. Sup. Ct. of Cal., Riverside Cty.*, 464 U.S. 501, 508 (1984).

[20] 18 U.S.C. § 2518(8)(a)-(b),(d).

**IT IS THEREFORE ORDERED** that the Movants' Motion to Inspect (Doc. 1) is **DENIED.**

**IT IS SO ORDERED**.

Dated this 17th day of March, 2017.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE